or Lasky? Lasky. Lasky. All right, Mr. Lasky. Good morning, and may it please the Court. My name is Brian Lasky, and I represent Petitioner John McPherson in this case. John McPherson exposed the largest fraud in Texas history, and the government enforcement action underlying this whistleblower appeal is unprecedented. The government secured a $38.7 million sanctions judgment and recovered almost $1 billion for defrauded investors. For his extraordinary assistance to the government, the Commission awarded him $21,000. But our argument here today is not rooted in basic fairness. It's rooted in the plain text of the statute, which the agency claims to embrace but in reality disregards. Section 78U6B1 directs the Commission to pay eligible whistleblowers so long as three conditions are met. First, there has to be a monetary sanction. Second, it has to be imposed in the related or the covered action. And third, it has to be collected. Congress did not give the—gave Congress—excuse me—Congress gave the agency discretion to set the percentage of the award, but it did not give it discretion to decide which amounts to count. Here, there are two tranches of money that the agency should have counted because all the statutory requirements are met. First, the $38.7 million sanctions judgment. And second, the distributions to investors under the bankruptcy court approval—excuse me—confirmed order. I'll start with the sanctions judgment. The agency—excuse me—does not deny that the sanctions judgment constitutes a monetary sanction and that it was imposed in the covered action, the district court case. It gets hung up on the word collected. According to the agency, collected means it, the agency itself, has to receive money. This approach to the statutory language is fundamentally flawed because Congress in Dodd-Frank explicitly divorced the receipt of money from the consideration of the amount of the award. Section 78U6C1B2 prohibits the commission from considering the amount of money in the SEC whistleblower fund in setting the amount of the award. The commission's reading also is atextual and reads words and requirements into the statute that simply aren't there. Congress did not specify how the monies are to be collected. Congress did not specify in Dodd-Frank by whom the monies are to be collected. In fact, they used the passive voice. Congress very easily could have said the sanctions have to be received by the government, by the commission. Congress could have explicitly said, like they have in other statutes, that the money needs to be deposited into the U.S. Treasury. They didn't do either one of those things. So here, when the commission settled the sanctions judgment in full for valuable consideration, it collected the judgment. This comports with the ordinary meaning of the term collect, to receive payment for, which Blatt's Law Dictionary defines as any valuable thing to satisfy a debt in partial or full consideration of the debt, excuse me. And this makes sense. The agency should be entitled to go out and settle a sanctions judgment to achieve its law enforcement objectives, but without compromising the whistleblower award. But that money, based on your argument regarding tax, that money is collected, though, by the commission. By the commission when it's settled. You made the argument about by whom collecting. Yeah, that one was. In satisfying the judgment itself, it collected it. And it makes sense. The agency should be able to settle it without compromising the whistleblower award, which comports with the structure, because Congress wanted to incentivize whistleblowers, and Congress put in a mandatory program. The other program was discretionary. This was mandatory. And if you allow the agency just to settle a debt and not give the whistleblower credit, you've actually undermined both the purpose and the structure of the statute. And this court has recognized some of those structural concerns. And we have an additional argument on the monetary, the $38.7 million. But I want to turn to really the big issue here, which is the investor recoveries. And from the get-go, the agency doesn't have a problem now with the collected language. It doesn't have a problem with the monetary sanction requirement. It focuses and stumbles really on the action requirement. And according to the agency, bankruptcy cases can never, bankruptcy proceedings can never be brought by the commission or any enumerated entity in the statute. And it says that Congress's clear design in Dodd-Frank was to exclude, categorically exclude bankruptcy cases. But couldn't it include anything from the filing of a proof of claim all the way up to an adversarial action, remove the action to the district court, remove the reference? Yeah. So the definitions in Dodd-Frank are extraordinarily broad. Any administrative agency, any administrative action, any judicial action. So Congress, far from categorically excluding bankruptcy, this case is why they passed Dodd-Frank. They passed it in response to the Madoff scandal, a massive Ponzi scheme that defrauded investors. Those companies, because they have no assets, no real business, they're based on a fraud, those almost inevitably wind up in bankruptcy. So this case is why, what Congress was thinking about. It took testimony from Marco Polis, who was the whistleblower in the Madoff scandal. So their fundamental approach to the entire question is wrong. And here, there are two ways that the bankruptcy case qualifies as a related or a covered action. It's a related action because DOJ brought a motion in the bankruptcy case, a proceeding in the bankruptcy case, to grab all the life partner subsidiaries, force them into bankruptcy so they could achieve the recoveries. And it began a brand new case against them, a brand new action, separate case caption. That satisfies the statutory language because it comports with the, again, the ordinary meaning of bring an action. Take legal steps to achieve a remedy. And again, this makes sense. DOJ went after the subsidiaries because they own the policy. There was a continuing fraud, and they needed to make sure that they stopped it and were able to recover the monies for it. It's exactly what the commission did in the enforcement action. And in fact, the commission in the enforcement action at the end moved for the appointment of a receiver, which is essentially the same thing, and in the alternative, it moved the district court in the covered action for a bankruptcy trustee. When the life partners tried to avoid it, they followed them into the bankruptcy. Both DOJ and the commission followed into the bankruptcy to achieve the exact same objectives. And that's what Congress was thinking about when it passed Dodd-Frank and when it defined its statutory terms. I see that my time is up.  Your time has expired, and you've saved time for about a little. Mr. Geiser? Thank you, Your Honor, and may it please the Court. The SEC misconstrued Section 78U-6, committed multiple legal errors, and failed to apply the correct statutory baseline in calculating the whistleblower award. I'll plan to be brief today unless the panel does have questions, and I wanted to focus on just a few points to supplement my friend's opening presentation. The first is looking to the $38.7 million claim. I think the easiest path forward for the panel to resolve that is to simply look to the fact that the SEC itself admitted that it traded its full claim in full and complete satisfaction for an interest in the creditor's trust. That is a direct receipt of consideration for a legal claim. This is not some illusory claim. This is not some marginal value claim. Not that the courts typically look through the value of consideration in any event. The creditor's trust was funded with a $12 million infusion of capital to pursue litigation. This is like buying stock in a corporation that could pan out or not. And normally when a party has a claim, and they satisfy that claim by saying, I will receive and collect what I'm owed in exchange for this asset, and that is a meaningful asset, it's not an illusory asset, it's not some tiny little thing. It's something that could have real significant legal value. Courts do not look past that and say, did the party strike a good deal, or did the deal end up panning out in the way that the party hoped? In this case, the SEC, by their own admission, again, fully satisfied and discharged their claim, that's collecting it, in exchange for valuable consideration in the interest in the creditor's trust. Now again, we do have the other arguments that the SEC also instructed through the bankruptcy plan to redirect the amounts that they were owed to injured investors. When those investors collect the funds, they're doing exactly what Dodd-Frank requires. The Dodd-Frank Act does not care who collects or where they collect, to the extent the SEC is continuing to argue, and I'm curious to see if my friend does it today, that any collection in a bankruptcy case is categorically excluded. There is absolutely no textual hook for that position. It's contrary to common sense. Surely, if the SEC went to a bankruptcy case with a proof of claim and satisfied that proof of claim, undoubtedly that would count under Dodd-Frank for a whistleblower baseline award. The same thing if the SEC brought an adversary proceeding in a bankruptcy case to establish the identical claim that it would establish in an enforcement action, surely that would count just as well. So I think there are multiple paths forward, without even getting into the plain language of the SEC's regulation, for at a minimum, in setting aside the award for failing to include the full $38.7 million that the SEC established as a judgment in an enforcement case, which is a prototypical SEC enforcement action that qualifies, I think, under any reading of subsection A-1. Now looking to the full recoveries in the bankruptcy case, again, I think that the SEC's primary basis for rejecting, including those recoveries, in the agency action, and again, it's the agency's rationale that they articulated in their own agency proceeding that binds them, is really that those collections happen in a bankruptcy case. Again, it doesn't matter where the funds are collected. The statute is clear on that point. It's framed in the passive voice about who collects. As long as the amount is collected, that's fine. It says where the amounts have to be imposed, but it doesn't say where they're collected. And I do think that the collection here was a direct result of the court, through the SEC's own motion and through an appointment by the Office of the U.S. Trustee, which acts under the Attorney General, for instituting a trustee in place to seek the full recovery for injured investors. And if you look to what the SEC was trying to do in its own enforcement action before the bankruptcy proceeding was initiated, there is absolutely no difference of any kind between having a receiver appointed in the SEC case and having a trustee appointed in this bankruptcy case. It was in fact the same individual, the same human being, that the SEC was looking to install as the receiver that ended up being the trustee. They sought the same recoveries on behalf of the same investors for the same reasons. They were doing this to effectuate the securities laws and prevent securities fraud. And again, I don't want to keep the panel here unnecessarily. If the panel does have questions, I'm happy to answer it. If not, I'll yield the remainder of my time. You should have time for rebuttal. Thank you, Mr. Gossett. Thank you very much.  May it please the Court, Steven Yoder for the Securities and Exchange Commission. Congress wrote the Commission's Whistleblower Statute to grant awards for assistance with two kinds of actions, covered actions brought by the Commission itself and related actions brought by other authorities listed in the statute. The bankruptcy case here qualifies as neither kind of action because it was brought instead by a voluntary petition filed by Life Partners Holdings, Inc. The Commission therefore correctly declined to calculate these claimants' awards based on what happened in the bankruptcy case. Once it gets to bankruptcy, then there's no recovery, right? In this case, if you're asking about the meaning of the word collected and my friend, Mr. Geyser's No, I'm actually, the way he stated it was kind of a general rule and I'm repeating that. So give us the general rule. Is it true that once it gets into bankruptcy, there's no recovery ever? The Commission did not say there's no recovery ever. What happened in this case was the Commission said that a bankruptcy case is neither a covered action nor a related action. When could there be recovery in a bankruptcy case? When could there be? In situations that were not discussed in the Commission's order, I don't want to foreclose what the Commission might say under other fact patterns, but if the Commission itself received money in a bankruptcy proceeding, which it did not hear, there's no evidence of that on this record, then the Commission would have discretion to find that perhaps that constituted an actual collection. That's the other issue of what it means, the passive voice to be collected. Getting back to Judge Smith's question, maybe as a follow-up, I'd like to ask what did the SEC do in the bankruptcy? I propounded to your opponent the idea of just the mere filing of a proof of claim or the institution of some type of adversarial proceeding, which I understand didn't happen in this case, an adversarial proceeding, but let me ask you about this case. What did the SEC do in the bankruptcy proceeding? Understood, Your Honor. In this case, when the bankruptcy petition was filed, the Commission was an unsecured judgment creditor of Life Partners Holdings. The Commission moved for the appointment of a trustee in the bankruptcy case, as did the Department of Justice and as did the Committee of Unsecured Creditors of Life Partners Holdings. The district court appointed a trustee. That trustee acted on behalf of all creditors of the bankrupt estate under the bankruptcy court supervision. It was not . . . that trustee was not an agent for either the Commission or for the Justice Department, and so I respectfully would push back against the assertion of my friends that the trustee was essentially acting as an agent for the Commission or for the Department of  Was it the same guy he mentioned that was the same person, same individual you wanted as the receiver in the civil case? Your Honor, we made an emergency motion for a receiver in our civil case. Obviously, in bankruptcy, it's very different. It's subject to the bankruptcy code. My question though specifically is, is it the same person or entity that you sought to have appointed receiver that was then successfully, on the SEC's motion, appointed as trustee? Yes, Your Honor. But in this case, when the trustee was appointed, he was not appointed to act on the government's  Understood. Thank you. And then, going on in the bankruptcy proceeding, there was a point where, in developing the reorganization plan, the Commission agreed to essentially settle its claim as a non-secure judgment creditor. And the precise language of the plan is quoted in the Commission's brief in a footnote. But in short, the Commission received an interest in the creditor's trust, which was on behalf of all, which represented all unsecure judgment creditors. And that interest was reallocated to the position holders' trust. Now, the position holders' trust represented all investors in the life settlement units that Life Partners had previously sold. And I want to make one point clear because it's not entirely clear in my friend's briefing. The position holders' trust did not represent the shareholders of Life Partners Holdings. And at points, my friends have suggested that the position holders' trust stood last in line to collect because that's where equity holders in a company stand. But this case presents the wrinkle. They were not actually the shareholders. They were purchasers of life settlement units. The Commission reallocated its claim to that trust. And the record reflects here that the Commission never received money itself. There's a declaration from the Commission staff, which is uncontroverted, that no monies owed to the Commission were paid out to those investors by means of the position holders'  And, pardon me, in any event, because the position holders' trust represented the life settlement investors, not the shareholders, it was actually not representing the same victims of the Commission's complaint. To step back, the Commission's complaint did not allege fraud in the sale of these life settlement units. It alleged misstatements to the shareholders of Life Partners Holdings Inc. Those misstatements were the basis for the Commission's action, which went to a jury trial. And the victims of those statements were actually the shareholders. They were not, in fact, the position—pardon me, the investors represented in the position holders' trust. So there is no clear connection, and there's no evidence that those investors were fully satisfied. Before the Commission, my friends argued that the Commission should apply a standard that looked at what it was able to collect before it settled its claim. And as our brief demonstrates, that's flatly inconsistent with the statute. The only thing the Commission ever received concretely here in exchange for its settlement was the dismissal of Life Partners' appeal, which was then pending before this Court. That is not the sort of asset that is easily monetized or quantified, and it certainly does not fit within the natural meaning of collecting a monetary sanction. And to go to my colleague's point about the fact that Congress used the passive tense, I would just like to point back to the language of the statute itself, specifically B-1. It states, in any covered judicial or administrative action or related action. So this subsection is starting with the preface that it's talking about covered actions and related actions. It goes on to say that the Commission in certain circumstances shall pay an award or awards in an aggregate amount to—and here I'm going to paraphrase—between 10 and 30 percent, and then back to the language, in total of what has been collected of the monetary sanctions imposed in the action or related actions. So there again we see the covered action concept and related action concept repeated immediately after the word collected as part of the same sentence. I think it's equally—an equal inference from the use of the passive voice for collected was that Congress simply didn't want to have to repeat the list of all the entities or to include the cross-reference once again, specifying who can bring a related action. In a sense, Congress was just trying to use the simplest, most elegant language it could, and it indirectly referenced those limitations by talking about covered actions and related actions. Now, again, the Commission realized—the Commission decided that actual collections are required here, and it's undisputed the Commission itself never actually collected anything. The— So how were the amounts of the awards determined, approximately 5,000 and approximately 21,000? Yes, Your Honor, they are determined as percentages of what was actually collected. My understanding is that the Commission actually collected from other defendants in its law enforcement action, but not from life partner holding zinc. So the Commission's order— So what was the total amount then—you can approximate, but what was the total amount that was collected? It was—let me see—I believe it was no more than a couple hundred thousand dollars. The award is capped at 30 percent of what has been collected, so it—and Mr. McPherson received an award of 20 percent, and I believe Mr. Barr, 5 percent of what was collected. So together they received 25 percent, and given the figures in question, it would not have been above $100,000. Well, is there anywhere in the record where we'll actually find the amount that was collected? I do not know that that's actually stated in the record. The most that—the Commission's final order references the percentages, and it references the amounts that it anticipates will be paid out based on the current collections. It does not state the total collections overall for the action. Well, we need to be a little bit more precise. Sure, I'm happy to— But what you just said referred to anticipated or expected collections rather than what was actually collected. Tell us what we'll find in this record, if anything, that gives some specific or at least approximate amounts as to anticipated or actual collections. I don't believe that that amount appears on this record, Your Honor. It was not critical to the Commission's decision here. Well, it's critical in the sense that if these plaintiffs recover some kind of percentage, that percentage is based on some kind of total amount of money, and so we need to have some kind of idea that the Commission went through the proper procedure to ascertain that total amount. Yes, Your Honor. The Commission did not set that forth in its final order. I can follow up with a letter to the Court with that information, if Your Honor would like. And then, continuing, I would like to respond to my friend's argument that the terms covered action and related action should be construed broadly because Congress used the word any, but the very case that my friend cite, Ali v. Federal Bureau of Prisons, also states in footnote 4, at page 219, that the modifier any may be limited by contextual language, and here the Commission's order followed that contextual language, talking about the definition of a covered or related action as having been brought by the Commission or one of the listed authorities. And I'd also like to push back against the suggestion that the Commission ever said that collections in bankruptcy are categorically prohibited from counting under the Commission's final order. The Commission did not state that here. What the Commission said was that the distribution order in the bankruptcy case here was not imposed in a covered action or a related action. That imposed in requirement appears in the statute itself, in the language I already read to Your Honors, and that language controls here. My friends here did not raise before the Commission the argument that essentially it should, that whatever the bankruptcy trustee collected should count as having been collected by the Commission. That argument was never fairly presented and, therefore, has been forfeited. And if they felt that the Commission's final order did not properly address that argument as they raised it, the vehicle for challenging that would have been for their counsel at that time to have moved for reconsideration, which the Commission's rules expressly allowed. So if they believe that the Commission misunderstood their argument and did not say enough about the term collection, they could have sought reconsideration. But as it is, the Commission's opinion is not primarily construing what constitutes a collection. It talks instead about where the distribution order was imposed. And there's no dispute here, I believe, that it was not actually imposed in a covered action or related action. Unless Your Honors have any further questions, I'm happy to rest. So what is your, you covered this, but maybe obliquely.  So Mr. Geiser said that the SEC directly received consideration from the creditor's trust when that transaction was made. So I assume it was equivalent value that was received and that that would be the consideration. Otherwise, the SEC would just be giving away money, which I'm afraid they didn't want to do. It's not clear from the record what that creditor's trust interest would have been worth. It's not easily monetizable. It's simply an interest for purposes of the bankruptcy reorganization plan that has to be taken into account. There was no monetary figure applied to it. It was an interest within the creditor's trust. And the record evidence, which we have moved to introduce to supplement the record, shows that the creditor's trust interest holders received a payout of approximately 2.5 percent of their unsecured claims. So really what happened here was that the Commission saw that it had a judgment claim that was not likely to be satisfied. And so when it received that interest, it settled. It essentially said, we will reallocate this interest to the position holder trust in exchange for life partner holdings agreeing to dismiss its appeal, which was then pending. So the Commission never tangibly received an interest that was easily monetizable. What would actually be received at a later date was still speculative at that point, but the Commission assessed the risks and decided that it was not worth pursuing. So it reallocated in exchange for dismissing of the appeal. All right. Thank you, Mr. Yoder. Thank you. So on rebuttal, Mr. Leske has reserved two minutes and Mr. Geiser one minute, so you need to be quick. Really, really concise. Thank you, Your Honor. Concise. It was your choice not to reserve any more than that. Your Honor, so the Commission has understated its role in both the district court proceedings in the bank from the very beginning. In the district court, they didn't go after the life partner subsidiaries because at that point they couldn't. They alleged an accounting fraud and then they moved to try to bring the subsidiaries into the district court action. So from the very beginning, they were looking to protect the retail investors, which is where all those recoveries came from. So this is in two discreet events, two discreet ones. Your question is how much does the SEC, were they involved? They minimized the role in the bankruptcy also. They had 20 lawyers in total, 16 discreet lawyers in all the actions, four of them in the bankruptcy court. Their motion to get a receiver was a highly contested week-long hearing with evidence and trials. That's what set the entire stage in order for them to get all the recoveries from the They've been involved every step of the one, and the Hong case out of the Second Circuit says that brought by the Commission. It's not exactly on point. It was decided before Loper, but it says brought by the Commission, foresees or contemplates some active role by the Commission, and they plainly played it in the bankruptcy court. In terms of their statutory analysis, the statutory language in B-1 says that the monies have to be imposed in the action, not collected. If you look at B-1, it says it plain and simple. So in overall, I don't know why the SEC has taken this position that bankruptcy really doesn't count, but that's really what they said. And my client, for the most part, thinks this is more or less of a bait and switch from his standpoint. The text didn't change at all. They knew Life Partners was in bankruptcy, yet it took them 13 years from when this started in order to issue an order based on the statutory text, giving him nothing. This court has recognized in Thornton that oftentimes the government has not been kind to whistleblowers, and John McPherson believes he deserves more, certainly based on the amount of time that he's waited and based on the entire purpose of the mandatory whistleblower program. All right. Thank you, Mr. Liske. Advisor? Thank you, Your Honor. I'll be very fast. First, I just want to set aside the SEC's forfeiture argument. These are pure questions of law. The SEC can't defend its decision on the stated basis of the decision, which under Chenery is what it has to do. These proceedings have none of the usual trappings of a true adversarial process, which under this court's decisions is required in order to have issue exhaustion, and there's really no basis for saying that we forfeited anything when the first time we even became aware of this was after the final decision was issued, because remember, in the preliminary determination, they said John Barr didn't help at all, a decision that was plainly wrong. My friend says that there was no real consideration, yet he admits that what they traded was a real investment in a real creditor's trust. The fact that they weren't sure how much it would be worth doesn't mean that it wasn't viable legal consideration. You can trade your interest for Apple stock, and it might end up being Apple stock, or it could be more like a Radio Shack stock. It could be a bad investment, but you're still getting actual legal consideration. The final point I'll make is that the SEC says that the trustee doesn't act on their behalf. The same is true for a receiver. In both cases, it's someone instituted by the U.S. Trustee's Office to effectuate the exact goals that the SEC is pursuing in its enforcement action. All right. Thank you, Mr. Gasser. Thank you. Your case is under submission. The last case for today, United States v. Connolly.